# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

TRIBECA CONDOMINIUMS　　　　　　　　　　　　Civil Action No.:
HOMEOWNERS ASSOCIATION, INC.,

　　　　Plaintiff,

v.

ACUITY, A MUTUAL INSURANCE COMPANY,

　　　　Defendant.

_____

# COMPLAINT AND JURY DEMAND
_____

**COMES NOW** TRIBECA CONDOMINIUMS HOMEOWNERS ASSOCIATION, INC., by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, ACUITY, A MUTUAL INSURANCE COMPANY, and in support of its Complaint, alleges and avers as follows:

## NATURE OF THE ACTION

1.　　Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's breach of contract, bad faith conduct, and unreasonable delay and denial in the payment of covered benefits due and owing under Plaintiff's first-party insurance contract.

## PARTIES

2.　　Plaintiff, Tribeca Condominiums Homeowners Association, Inc. ("Plaintiff" or "Tribeca") is a non-profit Colorado Corporation with its principal office in Denver, Colorado.

3.　　Defendant, Acuity, A Mutual Insurance Company ("Defendant" or "Acuity Insurance Company"), is a foreign insurance company incorporated and domiciled in the state of Wisconsin and maintains its principal place of business in a state other than in Colorado.

## JURISDICTION AND VENUE

4. This court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

5. Plaintiff is the duly organized homeowner's association for the development known as Tribeca, located at 1231 Downing Street, Denver, Colorado 80218 ("Property").

6. The Property is comprised of two roofing systems.

7. The overhang at the roof access door is clad with corrugated galvanized steel panels.

8. The main building is clad with an adhered ethylene propylene diene monomer ("EPDM") membrane.

9. Tribeca purchased a Policy of insurance from Acuity Insurance Company under Policy Number X60544 (the "Policy").

10. The Policy provides $1,548,997.00 in Building property damage coverage for the Property.

11. The Policy provides Building Ordinance of Law coverage for the Property.

12. The Policy was issued with effective dates of April 15, 2015 through April 15, 2016. A true and accurate copy of the Policy is attached hereto as **Exhibit "A."**

13. The Policy is an all risk policy of insurance.

14. The Policy is a replacement cost value policy and covers loss to the Property.

15. The Policy provides coverage for direct physical loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

16. The Policy does not require that the Property sustain functional damage for coverage to be afforded to covered property at the premises caused by or resulting from any covered cause of loss.

17. The Policy does not include a cosmetic exclusion

18. Under the Policy, Acuity Insurance Company agreed to adjust all losses with Tribeca fairly and timely.

19. Tribeca paid the premiums due under the Policy in a timely manner, and performed all duties and responsibilities required of it under the Policy.

20. On or about June 24, 2015, during the Policy period, Tribeca suffered a loss at the insured Property due to hail.

21. The damage from the hail constituted a covered loss under the Policy.

22. Tribeca timely reported the covered loss and damage to Acuity Insurance Company, and made a claim for the loss and damage to the Property.

23. Acuity Insurance Company assigned Claim Number PF3453 to the Property loss.

24. Acuity Insurance Company assigned a field claims adjuster, Erin Connell, to investigate and adjust Tribeca's claim for direct physical loss to the Property as a result of the June 24, 2015 hail storm.

25. Acuity Insurance Company assigned a desk claims adjuster, Shaun Armstrong, to investigate and adjust Tribeca's claim for direct physical loss to the Property as a result of the June 24, 2015 hail storm.

26. Tribeca retained C3 Group, Inc. ("C3 Group"), a Colorado state licensed public adjusting firm, to assist in the adjustment of Sunset Stone's claim for direct physical loss to the Property as a result of the June 24, 2015 hail storm.

27. On or about April 12, 2016, Tribeca representative, C3 Group, conducted a site inspection of the Property to determine the extent of direct physical damage resulting from a hail storm that occurred on June 24, 2015.

28. During its site inspection, C3 Group documented objective evidence of direct physical hail damage to the Property's roofing system

29. During its site inspection, C3 Group documented randomly-distributed, roughly circular and isolated indentations throughout the Property's roofing system.

30. During its site inspection, C3 Group conducted intrusive testing which illustrated objective evidence of direct physical hail damage to the Property's roofing system.

31. During its sire inspection C3 Group conducted moisture testing to the Property's roofing system, which documented high moisture within the Property's roofing system.

32. On or about April 15, 2016, Tribeca representative, C3 Group, provided Acuity Insurance Company with Tribeca's comprehensive damage estimate which outlined $89,260.79 in replacement cost value covered damages resulting from a hail storm that occurred on June 24, 2015. A copy of C3 Group's Damage Estimate is attached hereto as **Exhibit "B."**

33. C3 Group's Damage Estimate included one hundred sixty-six photographs illustrating the significant covered damage resulting from the hail storm occurring on June 24, 2015.

34. Acuity Insurance Company retained, Cardillo Forensics, LLC ("Cardillo Forensics"), to determine the extent of direct physical damage to the Property as a result of the June 24, 2015 hail storm.

35. On or about May 25, 2016, Tribeca representative, C3 Group, and Cardillo Forensics conducted a site inspection of the Property.

36. Cardillo Forensics performed no intrusive testing during its site inspection of the Property.

37. Cardillo Forensics performed no moisture readings of the Property's roofing system during its site inspection of the Property.

38. Cardillo Forensics identified dimples consistent with hailstone impacts to the Property's corrugated metal roofing system.

39. Cardillo Forensics identified dimples consistent with hailstone impacts to the Property's aluminum flue caps.

40. On or about June 1, 2016, Acuity Insurance Company provided Tribeca with a copy of the Cardillo Forensics Report.

41. The Cardillo Forensics Report indicated that the Property's EPDM roofing system was not damaged.

42. Acuity Insurance Company retained, Damage Control, Inc. ("Damage Control"), to provide an estimate of direct physical damage to the Tribeca Property resulting from the hail storm occurring on June 24, 2015.

43. Damage Control provided Acuity Insurance Company with an estimate of direct physical damage to the Tribeca Property in the amount of $2,290.56. A copy of the Damage Control Estimate is attached hereto as **Exhibit "C."**

44. Damage Control's Estimate included only eleven line items:

- Removal and replacement of 6.00 exhaust caps through flat roof
- Removal and replacement of 1.00 oversized flue cap
- Cleaning of 185.79 square feet with EPDM roofing with pressure/chemical spray
- Staining of 185.79 square feet of wood fence/gate
- Removal and replacement of 132.71 square feet of corrugated roof panels
- Removal and replacement of 16.00 linear feet of apron counterflashing
- Removal and replacement of 1.00 halogen light bulb
- Removal and replacement of 26.50 linear feet of aluminum gutter/downspouts
- 1.00 dumpster load of approximately 20.00 yards
- Taxes, insurance, permits & fees in the amount of $51.60

45. In adopting the Damage Control Estimate, Acuity Insurance Company purposefully overlooked the extent of covered damages to the Property resulting from the hail storm occurring on June 24, 2015.

46. In adopting the Damage Control Estimate, Acuity Insurance Company delayed and denied the payment of covered benefits to Tribeca without a reasonable basis.

47. On or about September 23, 2016, Tribeca Condominiums demanded appraisal as provided under the terms and conditions of the Policy.

48. On or about December 1, 2017, the umpire delivered an appraisal award in the amount of $103,199.17. A copy of the Appraisal Award is attached hereto as **Exhibit "D."**

49. The umpire's Appraisal Award was approximately forty-five times higher than Acuity Insurance Company's estimate of direct physical damage to the Tribeca Property in the amount of $2,290.56.

50. On or about January 10, 2018, Acuity Insurance Company issued payment related to the appraisal award.

51. Despite being presented with a comprehensive estimate of covered damages by C3 Group, Acuity Insurance Company improperly denied Tribeca's claim for loss to the Property resulting from the hail storm occurring on June 24, 2015.

52. Tribeca has fulfilled all duties required of them under the Policy after discovery of the loss.

53. Tribeca has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Acuity Insurance Company.

## FIRST CLAIM FOR RELIEF
**(Bad Faith Breach of Insurance Contract)**

54. Tribeca realleges and reaffirms Paragraphs 1-53 as if fully set forth herein.

55. Under the Policy and Colorado law, Acuity Insurance Company owes its insured the duty of good faith and fair dealing.

56. An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices.

57. Acuity Insurance Company sold Tribeca the Policy at issue, the intent of which was to provide coverage for direct physical loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

58. Acuity Insurance Company knew that Tribeca purchased the Policy to protect its Property in the event of a loss.

59. Acuity Insurance Company owed Tribeca the non-delegable duty to investigate its claim objectively and not look for ways to deny benefits or attempt to not pay the full amount owed.

60. Acuity Insurance Company owed Tribeca the duty to give equal consideration to the financial interests of Tribeca, and not give greater consideration to its own financial interests while investigation and adjusting Tribeca's claim.

61. Acuity Insurance Company failed to interpret its insurance policy reasonably.

62. Acuity Insurance Company failed to resolve doubts concerning insurance coverage in favor of the policyholder.

63. Acuity Insurance Company failed to evaluate the reports received from its consultants to determine whether the consultant had conducted the necessary investigation of the claim.

64. Acuity Insurance Company knew that its decision to underpay benefits owed to Tribeca was intentional and not accidental.

65. Acuity Insurance Company failed to treat Tribeca's interests with equal regard to its own.

66. Acuity Insurance Company failed to conduct a full, fair, and prompt investigation of Tribeca's claim.

67. Acuity Insurance Company failed to objectively evaluate Tribeca's claim based on all available evidence, and not just evidence which Acuity Insurance Company believed supported its position.

68. Acuity Insurance Company improperly denied Tribeca's claim by failing to examine and question its retained consultant's reports to assure that they contained all opinions necessary to properly evaluate the claim.

69. Acuity Insurance Company improperly denied Tribeca's claim by failing to examine and question its retained consultant's reports to assure that they were based on all relevant and available evidence.

70. Acuity Insurance Company representatives, including Shaun Armstrong, received income-based compensation to quickly close Tribeca's claim for direct physical loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

71. Acuity Insurance Company representatives, including Shaun Armstrong, received income-based compensation to reduce claims payments made to Tribeca on its claim for direct physical loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

72. Acuity Insurance Company improperly set claims handling goals to reduce the amount paid on claims, including Tribeca's claim for direct physical loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

73. Acuity Insurance Company improperly delayed Tribeca's claim to reduce overall claims payments.

74. Acuity Insurance Company improperly delayed Tribeca's claim to increase profits.

75. Acuity Insurance Company improperly delayed Tribeca's claim to maintain its loss ratio.

76. Acuity Insurance Company improperly delayed Tribeca's claim to meet department goals.

77. Acuity Insurance Company improperly delayed Tribeca's claim by providing financial incentives to its personnel, including Shaun Armstrong, to influence claims handling.

78. Acuity Insurance Company improperly delayed Tribeca's claim to reduce the average amount paid on overall claims.

79. Acuity Insurance Company disregarded the validity of Tribeca's claim as demonstrated by an independent appraisal award in excess of $100,000.00 than the highest estimate offered by Acuity Insurance Company.

80. Acuity Insurance Company disregarded the validity of Tribeca's claim as demonstrated by an independent appraisal award that was forty-five times higher than the highest estimate offered by Acuity Insurance Company.

81. Acuity Insurance Company disregarded the validity by woefully underpaying the claim.

82. Acuity Insurance Company purposefully retained outcome oriented experts in an effort to effectuate a deceptively low settlement.

83. Acuity Insurance Company knew that it owed an obligation of good faith and fair dealing to Tribeca, but misrepresented Policy benefits and failed to complete a full and fair investigation.

84. Acuity Insurance Company conduct in the handling of Tribeca's claim demonstrates that Acuity Insurance Company was focused on benefiting itself to the detriment of Tribeca.

85. Acuity Insurance Company has committed unfair settlement practices, including, but not limited to:

    (a) Acuity Insurance Company has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

    (b) Acuity Insurance Company has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

  (c) Acuity Insurance Company refused to pay claims without conducting a reasonable investigation based upon all available information;

  (d) Acuity Insurance Company has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

  (e) Acuity Insurance Company has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

  (f) Acuity Insurance Company has misrepresented terms and conditions of the Policy in an attempt to influence its Insured to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

  (g) Acuity Insurance Company encourages its claims representatives to engage in unfair claims settlement practices against its Insured, thereby violating applicable laws and regulations of the State of Colorado.

86. As a direct and proximate result of Acuity Insurance Company action, Tribeca has:

  (a) Incurred increased costs to repair, restore and/or replace the significant property damage that was caused by direct physical loss or damaged resulting from the June 24, 2015 hail storm;

  (b) Suffered damages as a proximate result of the misconduct alleged; and

  (c) Suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory gees, and other losses.

87. Acuity Insurance Company has committed such actions willfully and with such frequency as to indicate a general business practice.

**WHEREFORE**, Plaintiff, Tribeca Condominiums Homeowners Association, Inc., respectfully requests this Court enter judgment against Defendant, Acuity, A Mutual Insurance Company, for damages resulting from its breach of its duty of good faith and fair dealing, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**
**(Unreasonable Delay and Denial of Payment of Covered Benefits**
**Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

88. Tribeca re-alleges and reaffirms Paragraphs 1-87 as though fully set forth herein.

89. Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

90. Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

91. Tribeca is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

92. Tribeca suffered a loss covered by the Policy and submitted a claim for that loss to Acuity Insurance Company.

93. The claimed loss and damage submitted by Tribeca was covered by the Policy and Tribeca was owed covered benefits under the Policy.

94. Acuity Insurance Company delayed payment of covered benefits without a reasonable basis for its actions.

95. Acuity Insurance Company denied payment of covered benefits without a reasonable basis for its actions.

96. Acuity Insurance Company has unreasonably delayed covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Tribeca's Complaint.

97. Acuity Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate Tribeca's loss.

98. Acuity Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action by providing a first damage estimate without having documented a reasonable investigation based upon all information.

99. Acuity Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action by providing a first damage estimate which did not include all covered damages.

100. Acuity Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action by forcing Tribeca to retain its own professionals to help properly adjust the covered loss.

101. Despite receipt of Tribeca's comprehensive estimate, Acuity Insurance Company delayed and denied payment of covered benefits without a reasonable basis for doing so.

102. Acuity Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action as demonstrated by an independent appraisal in excess of $100,000.00 than the highest estimate offered by Acuity Insurance Company.

103. Acuity Insurance Company disregarded the validity of Tribeca's claim as demonstrated by an independent appraisal award that was forty-five times higher than the highest estimate offered by Acuity Insurance Company.

104. Acuity Insurance Company unreasonably delayed and denied Tribeca's claim to reduce overall claims payments.

105. Acuity Insurance Company unreasonably delayed and denied Tribeca's claim to increase profits.

106. Acuity Insurance Company unreasonably delayed and denied Tribeca's claim to maintain its loss ratio.

107. Acuity Insurance Company unreasonably delayed and denied Tribeca's claim to meet department goals.

108. Acuity Insurance Company unreasonably delayed and denied Tribeca's claim by providing financial incentives to its personnel, including Shaun Armstrong, to determine claims handling.

109. Acuity Insurance Company unreasonably delayed and denied Tribeca's claim by motivating its claims department to pay less on claims, such as Tribeca's claim for damages, than what is otherwise owed.

110. Acuity Insurance Company unreasonably delayed and denied Tribeca's claim to reduce the average amount paid on overall claims.

111. Acuity Insurance Company unreasonably delayed and denied Tribeca's claim by asserting coverage positions that it knew were without merit.

112. The actions of Acuity Insurance Company were intended to dissuade Tribeca in pursuing benefits due and owing under the terms of the Policy.

113. Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Tribeca Condominium Homeowners Association, Inc., respectfully requests this Court enter judgment against Defendant, Acuity, A Mutual Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

### REQUEST FOR JURY TRIAL

114. Tribeca requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 6th day of March, 2018

/s/*Jonathan E. Bukowski*
Larry E. Bache, Jr., Esq.
Jonathan E. Bukowski, Esq.
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com